UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR18-081RSM |
| Plaintiff, | |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| HOON NAMKOONG, | |
| Defendant. | Sentencing Date: September 28, 2018 |

Hoon Namkoong is one of the leading wholesale buyers of sea cucumbers in Washington State. He earned millions of dollars in revenue trading in this resource. Rather than abide by state and tribal laws put in place to protect the marine resource and associated industry, Namkoong and various fishers embarked on a multi-year scheme to secretly harvest and sell sea cucumbers in excess of state and tribal limits. By this fraud, Namkoong caused this stressed resource to be over-harvested by over 250,000 pounds. He did so for the sole reason of enriching himself.

On April 16, 2018, Namkoong pled guilty to a one-count information charging a conspiracy to violate the Lacey Act. Namkoong has agreed that the market value of the illegally harvested sea cucumbers is approximately $1.5 million.

Government's Sentencing Memorandum / - 1
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on the duration of the scheme, the volume of unreported sea cucumbers, as well as the detrimental effect on the resource co-management process, the government recommends a term of imprisonment of twenty-four (24) months, followed by three years of supervised release.

The government also respectfully requests that the Court issue an order that restitution be paid to the Northwest Indian Fisheries Commission, as designated restitution payee, in the total amount of $1,499,999. The parties have also agreed to the imposition of a money judgment in that same amount, which approximates the defendant's ill-gotten proceeds from the sale of unreported sea cucumbers.

## I. FACTUAL BACKGROUND

The parties' agreed statement of facts found on pages six through nine of their plea agreement summarizes the applicable state and tribal laws and describes the conspiracy. Certain of those facts are repeated below.

Sea cucumbers are a type of shellfish and are a part of the *echinoderm* family, which includes starfish and sea urchin. The specific type of sea cucumber common to Washington State is the California Sea Cucumber. Sea cucumbers are sought primarily in China, both for culinary and medicinal purposes.[1]

The rise of the Chinese economy and increase in median Chinese incomes has consequently dramatically increased Chinese demand for sea cucumbers.[2] The Chinese market price for Washington sea cucumbers has increased in recent years. "[T]he ex-vessel price per pound for Washington sea cucumbers has increased over twofold, from less than $2 per pound (adjusted to today's dollars to account for inflation) in the early 1990s to the current level of over $5."[3]

---

[1] Tommy Trenchard, *China's Hunger for Sea Cucumber Reaches Islands of Sierra Leone*, REUTERS, https://www.reuters.com/article/us-leone-seacucumbers/chinas-hunger-for-sea-cucumbers-reaches-islands-of-sierra-leone-idUSKBN0DI0BI20140502 (last visited September 10, 2018).
[2] *Id.*
[3] Henry S. Carson et al., Status of the California Sea Cucumber and Red Sea Urchin Commercial Dive Fisheries in the San Juan Islands, Washington State, USA, FISHERIES RESEARCH, 179, 187 (2016), attached as Exhibit 1.

Government's Sentencing Memorandum / - 2
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## A. Legal Background

The demand for sea cucumbers has resulted in concern about their over-harvest. The fishery in Washington is managed under a federal, state and tribal co-management plan. Under the plan, the sea cucumber harvest in Washington State is divided between state and tribal-managed sectors, with the total harvest quota apportioned roughly equal between the two. The harvest seasons typically run from August to the following March, or until the state-wide quota is met. The plan depends on accurate reporting by fishers of their catch and wholesale buyers of their purchases.

Sea cucumbers are classified as "shellfish" under Washington State law. RCW 77.12.047. Washington State law requires that all persons originally receiving shellfish in Washington State (excluding retail transactions) be licensed wholesale fish buyers. All licensed wholesale fish buyers must immediately, completely, and accurately complete a fish receiving ticket (fish ticket) for each purchase or receipt of shellfish. WAC 220-352-180(1)(b)(i). If the wholesale fish buyer purchases the sea cucumbers from a fisher who is a licensed tribal fish buyer, a fish ticket is required to be filled out by the licensed wholesale fish buyer if the tribal fish buyer has not already filled out a fish ticket and provided a copy of the ticket or the ticket number to the secondary receiver as proof. WAC 220-352-180(1)(b)(ii). The secondary receiver must have a copy of the fish ticket or documentation of the purchase including the amount and species of the shellfish purchased. These records must be retained for three years. RCW 77.15.568(3).

Tribal laws, including the laws of the Lummi Nation, likewise, require the accurate reporting on fish tickets of the sea cucumber harvest. Section 10.07.240 of the Lummi Nation Code of Laws requires that the seller and the buyer in any fish or shellfish sale must ensure that the sale is accurately reported on the fish ticket.

The fish ticket must be signed by both the fisher and wholesale fish buyer, under penalty of perjury. Failure to properly and accurately prepare a fish ticket, or to submit the ticket as required by law, is a violation of Washington State law. RCW 77.15.630 (unlawful fish/shellfish catch accounting).

Government's Sentencing Memorandum / - 3
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## B. Orient Seafood Production and Hoon Namkoong

Orient Seafood Production ("OSP") is a Fife, Washington-based wholesale seafood business owned and controlled by Hoon Namkoong ("Namkoong"). OSP is a licensed wholesale fish buyer under Washington State law, and Namkoong is the sole licensed fish buyer for OSP. Through OSP, Namkoong engaged in the business of purchasing, processing, selling, exporting and transporting sea cucumbers.

Throughout parts of the three harvest seasons (between 2014 and 2017), Namkoong arranged with state and tribal fishers to intentionally under-report the total amount of sea cucumbers he purchased, by a variety of means, including the following:

(i) Namkoong purchased sea cucumbers partially by check and partially in cash. On those occasions, Namkoong wrote a check for less than the total amount of the purchase and paid cash for the remainder of the purchase. In those instances, Namkoong and co-conspirators prepared and submitted fish tickets, which fraudulently reported less than the total amount of sea cucumbers purchased, and often purposefully omitted those sea cucumbers purchased in cash.

(ii) Namkoong purchased sea cucumbers from co-conspirators for which he and his co-conspirators failed to prepare and submit any corresponding fish tickets.

(iii) Namkoong and his co-conspirators prepared and submitted fish tickets for less than the total amount of sea cucumbers purchased by Namkoong on a given day.

Namkoong transported the sea cucumbers he purchased from the harvest locations to his facility in Fife, Washington for processing by drying, salting and other means. From there, Namkoong sold the processed sea cucumbers, including those that he and his co-conspirators had not reported to state and tribal authorities, in interstate and foreign commerce to commercial wholesale seafood buyers in the United States and Asia. During the period of the conspiracy, Namkoong sold sea cucumbers for approximately $4 million.

Government's Sentencing Memorandum / - 4
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C. Total Weight and Post-Processing Market Value of Sea Cucumbers Taken In Violation of State Law.

The total weight of the unreported sea cucumbers purchased by Namkoong during the conspiracy was approximately 250,000 pounds of unprocessed catch. Plea Agreement ¶ 9(E). Namkoong purchased the sea cucumbers from dive fishers for an approximate price of $4.50 per pound. The parties have agreed that the wholesale market value, after processing, of the unreported sea cucumbers was approximately one million, four hundred ninety-nine thousand, nine hundred and ninety-nine dollars ($1,499,999). Plea Agreement ¶ 9(E).

### D. Charge and Plea Agreement

Namkoong was charged by information with a conspiracy to violate two separate provisions of the Lacey Act, under 18 U.S.C. § 371. The Lacey Act is a federal statute that criminalizes certain actions taken with respect to plants and animals obtained in violation of state or tribal law. 16 U.S.C. § 3371 *et seq*. Namkoong was charged with conspiring to violate Lacey Act provisions related to the submission of false records, and for the sale/possession/transport of shellfish taken in violation of state or tribal law. *See* 16 U.S.C. § 3372(a), (d); Dkt. No. 1 (Information) ¶ 10. Namkoong pled guilty to the charge on April 16, 2018.

## II. APPLICABLE STATUTORY AND GUIDELINE PROVISIONS

### A. Statutory Provisions

Mr. Namkoong's conviction for conspiracy in violation of 18 U.S.C. § 371 subjects him to a statutory maximum of five years imprisonment, a three-year maximum term of supervised release, and a fine of up to $250,000.

### B. Guideline Provisions

The parties agreed to the application of the following guidelines in the plea agreement, which have also been adopted by the Probation Office.

Government's Sentencing Memorandum / - 5
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Item | Guideline | Adjustment |
|---|---|---|
| Base Offense Level. | USSG § 2Q2.1(a) | 6 |
| Enhancement for offense committed for pecuniary gain. | USSG § 2Q2.1(b)(1)(A) | 2 |
| Agreed market value of illegally trafficked sea cucumbers more than $550,000, but less than $1,500,000. | USSG §§ 2Q2.1(b)(3)(A)(ii), 2B1.1(b)(1)(H)) | 14 |
| Acceptance of Responsibility. | USSG § 3E1.1 | (3) |
| **Total Offense Level** | | **19** |

There is no dispute on the applicable guidelines range in this case. A total offense level of 19 and a criminal history category of I yields an advisory guidelines range of 30-37 months.

### III. COMPARABLE SENTENCES

The 24-month sentence sought by the government is in line with sentences imposed in other federal natural resource theft cases that share the following characteristics: (a) the time period of the crime was lengthy; (b) the defendant, through his/her role in the offense and/or industry, played a facilitating role in the conduct; (c) the value of the natural resource illegally taken was significant (i.e. more than $100,000).[4] While the government is not aware of any recent federal cases in this district that involve the large-scale over-harvest of fish or shellfish, it has identified the following comparison cases from other districts:

---

[4] While most of the cases compiled in this section included a conviction for a violation of the Lacey Act, or a conspiracy to violate that statute, certain were charged as a violation of other false record-keeping and/or fraud statutes. In each case, however, the gravamen of the offense included the violation of state law governing natural resource conservation and/or the submission of false records to facilitate or cover-up the over-harvesting of a natural resource.

Government's Sentencing Memorandum / - 6
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- ***United States v. Christopher Byers, CR13-783 (D.N.J.)*:** 30-month sentence for defendant convicted of overharvesting more than $200,000 worth of scallops;

- ***United States v. Oceanpro Industries, et al., CR09-634 (D. Md.)*:** 21-month and 15-month sentences, for individual defendants convicted of purchasing $854,812 and $626,444 worth of striped bass, respectively;

- ***United States v. Reeves, et al., CR11-520 (D.N.J):*** 26-month sentence for oyster purchaser who falsified oyster catch records leading to $750,000 oyster overharvest over four years (following a trial);

- ***United States v. William Sheldon, CR17-32 (D. Me.); United States v. Tommy Water Zhou, CR17-09 (E.D. Va.)*:** 18-month and 6-month sentences for traffickers of unlawfully-taken juvenile eels involving loss of $150,361 (Zhou), and between $250,00 and $550,000 (Sheldon); and,

- ***United States v. Charles Wertz, CR13-282 (E.D.N.Y); United States v. Anthony Joseph CR14-201 (E.D.N.Y),*** 12-month-and-a-day sentence for defendant convicted of under-reporting $200,000 worth of fluke; 7-month sentence for co-defendant who underreported $620,000 worth of fluke.

The closest recent local analogy to this case is probably the 2015 Lacey Act conviction of Harold Kupers, a mill owner who systematically purchased maple unlawfully harvested in violation of state law. *United States v. Harold Kupers,* CR15-5350BHS (W.D. Wash.). While the case did not involve fish or shellfish, it involved fraud on the state management of a natural resource through falsified tickets or permits. Fundamentally, both *Kupers* and the case before the Court are a theft of public property. Kupers was sentenced to a split sentence of six months imprisonment and six months of home confinement. However, the value of the maple involved in *Kupers* ($499,414) was significantly less than the sea cucumbers at issue here, resulting in a lower guideline range of 24-30 months. There was also a critical difference in the level of knowledge and involvement in the crime. Kupers argued at sentencing that he was, at best, deliberately ignorant of the fact the maple trees had been taken in violation of state law. In the instant case, Namkoong cannot possibly claim anything but full involvement in, and knowledge of, the scheme to violate state and tribal law.

Government's Sentencing Memorandum / - 7
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV. SENTENCING RECOMMENDATION

The government recommends a sentence of twenty-four (24) months of imprisonment, to be followed by three (3) years of supervised release. Consideration of all of the Section 3553(a) factors support this sentence as reasonable and just. A number of the relevant 3553(a) factors are discussed in more detail below.

## A. Nature and Circumstances of the Offense, and the History and Characteristics of the Defendant (Section 3553(a)(1))

The nature and circumstances of the offense are serious. The factual basis of the plea agreement identifies the regulatory scheme and the specific nature and circumstances of the defendant's crime. Certain aspects of the offense conduct are particularly relevant to this sentencing factor.

### 1. Sophistication, Scope and Duration of Defendant's Scheme

The defendant's fraud on the state and tribal co-managers of the sea cucumber resource in Washington State spanned three harvest seasons: 2014-15, 2015-16, and 2016-17. Namkoong was the hub and common player among at least four non-tribal fishers and more than thirty Lummi tribal fishers who conspired to cheat the system. The scope – in terms of pounds of sea cucumber, dollars, co-conspirators, and duration – is notable. This crime is not a single lapse in judgment, or even a deception carried out in monthly reporting requirements. The defendant engaged in false reporting on an almost daily basis over three harvest seasons. The defendant's business, or at the very least, the profit margin of that business, relied on the theft of a public resource and the need to hide that theft from authorities. This protracted, calculated, and volitional course of conduct warrants a 24-month sentence.

### 2. Defendant's History and Personal Characteristics

Defendant's history and characteristics do not weigh in favor of a lesser sentence than that recommended by the government. Hoon Namkoong is a sophisticated, commercial seafood distributor. He has been a part-owner of Orient Seafood Production (OSP) for more than thirty years. PSR ¶ 44. He is regularly among the most prolific of

Government's Sentencing Memorandum / - 8
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a limited number of commercial sea cucumber fish buyers in Washington State. Counting the illegal, unreported harvest, Namkoong's company, OSP, purchased more than half of the sea cucumbers sold by tribal harvesters during the period of the fraud. Considering the defendant was steeped in the commercial seafood industry, and his central role in the Washington State sea cucumber trade, his conduct is particularly egregious.

**B.  The Court's Sentence Should Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment (Section 3553(a)(2)(A)).**

By collaborating with many dive fishers to falsify and fail to submit hundreds of fish reporting tickets over three harvest seasons, the defendant clearly demonstrated a disrespect for the law. The defendant's criminal conduct went far beyond mere records violations, however, because each false or non-existent fish ticket concealed the theft of a marine resource. Each of those tickets – submitted under penalty of perjury – is an express warning to follow the law. Defendant and his co-conspirators thumbed their respective noses at these sworn reporting requirements again and again. In doing so, they threatened the entire resource management framework as well as the Washington State sea cucumber population.

**1.  Impact on Co-Management Relationship in Washington State**

The government undertook a detailed analysis of Namkoong's catch, accounting and financial records and compared the amount of sea cucumber reflected in these records to the fish tickets reported to the state and tribal management authorities for Namkoong's purchases. This analysis *conservatively* yielded *more than 250,000 pounds* of unreported sea cucumber purchased by Namkoong for the three harvest seasons at issue.[5] This is a significant amount of over-harvesting in light of the total statewide quota. During the harvests in question, total yearly sea cucumber quotas for all

---

[5] State authorities conducted a search warrant of OSP in November 2016. There is no reason to assume Namkoong would not have continued the fraud, but for the execution of the search warrant revealing the criminal investigation.

Government's Sentencing Memorandum / - 9
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington State sectors totaled about 750,000 pounds.[6] Depending on the harvest year, Namkoong's *unreported catch* represented between 10 and 20 percent of the *total* annual sea cucumber harvest for the state. The percentage of over-harvest is even higher if the analysis is limited to the tribal-managed harvest sectors from which the significant majority of the unreported catch derived. The magnitude of this theft caused fisheries statisticians to receive materially false harvest numbers. The defendant's fraud therefore undermined the critical modeling and planning necessarily effectively manage the resource.

The structure of the sea cucumber industry in Washington State largely mimics its other co-managed counterparts. In the landmark *Boldt* Decision, this Court reaffirmed the right of Indian Tribes in Washington State to co-manage fishery resources, in accordance with various treaties the United States had signed with the tribes. *United States v. Washington*, 384 F. Supp. 312, 414-419 (W.D. Wash 1974), *aff'd*, 520 F.2d 676 (9th Cir. 1975) ("*Boldt* Decision"). Though the *Boldt* Decision did not apply directly to the sea cucumber industry, it created the basic framework for the co-management of maritime resources that would be extended to shellfish by the R*afeedie* Decision, which held that tribes have treaty rights to half of the harvestable shellfish in Puget Sound. *United States v. State of Washington*, 873 F. Supp. 1422 (W.D. Wash. 1994), *aff'd in part, rev'd in part,* 135 F.3d 618 (9th Cir. 1998), *opinion amended and superseded on denial of reh'g*, 157 F.3d 624 (9th Cir. 1998). Though Judge Rafeedie announced his decision in 1994, and the Court of Appeals affirmed the relevant portions in 1998, the tribes and the state did not reach an agreement implementing the ruling until 2007.[7]

---

[6] There are five management regions in Puget Sound. Allocation is not necessarily 50/50 between the tribes and the state; sometimes another arrangement may be a better fit for the parties' needs.

[7] *Commercial Shellfish Growers Settlement*, NORTHWEST INDIAN FISHERIES COMMISSION, https://nwifc.org/about-us/shellfish/commercial-shellfish-growers-settlement/ (last visited September 8, 2018).

Government's Sentencing Memorandum / - 10
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The tribes and state cooperate in applying the best science to develop fisheries that fairly distribute opportunities for both tribal and non-Indian fisheries. The tribes adopt and enforce regulations for their members, while the state adopts and enforces regulations for non-Indians.[8] The Washington Department of Fish and Wildlife (WDFW), which represents the interests of Washington State, collaborates with the Northwest Indian Fisheries Commission (NWIFC), which supports the twenty treaty Indian tribes in western Washington in the process.

Though the tribes and the state forged the co-management framework in the wake of the *Boldt* Decision and subsequent cases, there is still uncertainty in the relationship between the tribes and WDFW. State and tribal stakeholders re-negotiate the sea cucumber management plan on a yearly basis. Not surprisingly, the defendant and his co-conspirators' actions have significantly complicated an already delicate process. *See, e.g.*, Letter of Jamestown S'Klallam and Port Gamble S'Klallam Tribes (attached as Exhibit 2), at 2 ("The alleged illegal harvest of cucumbers . . . has resulted in significant staff resources over the past 12 months from our tribes towards management the overharvest and negotiating an agreed upon payback between the tribes and state."); WDFW Letter (attached as Exhibit 3), at 2 ("[W]hat had been developing into a model of state-tribal collaboration in improving fishery sustainability has instead become a strained co-management relationship that may impact other jointly-managed fisheries."). Resource management measures should be developed based on sound scientific evidence and accurate catch reporting. When a predominant player undertakes a scheme to falsify records, the skewed results put the co-management process in jeopardy.

### 2. Impact on the Washington State Sea Cucumber Population.

Sustainability concerns have arisen within the sea cucumber industry in Washington State, despite the fact that the sea cucumber species is neither threatened nor

---

[8] *Tribal Fishing & Co-Management*, WASHINGTON DEPARTMENT OF FISH & WILDLIFE, https://wdfw.wa.gov/fishing/tribal/management.html (last visited September 14, 2018).

Government's Sentencing Memorandum / - 11
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

endangered.  Signs that a harvest rate of 11.4% for the California Sea Cucumber in Washington State is unsustainable include: low-density shallow waters, a relative abundance that has remained depressed, and a continuous decline in catch-per-unit-effort (CPUE).[9]  Anecdotal evidence from harvesters suggests that sea cucumber populations have not recovered from historic intensive harvests, and may be in continued decline. Harvesters often return to some of the same locations year after year, and report lower densities than past decades, and note areas that are "fished out" and have not recovered.[10] In light of these observations, the quota system and co-management structures are important because they allow the population to recover and replenish.[11]  In fact, the co-management partners had specifically undertaken a phased reduction in harvest levels due to lower observed yields.  *See* WDFW Letter (Exhibit 3), at 1.  Unbeknownst to the resource managers, the defendant's fraud actively frustrated these conservation efforts. *Id.* at 2 ("It is no wonder, then, that we have failed to see signs of recovery as a result of the work of the sea cucumber managers and the sacrifices of the lawfully compliant harvesters.  Because we do not see recovery signs, we are forced continue to reduce harvest.").

**C.  The Court's Sentence Must Afford Adequate Deterrence (Section 3553(a)(2)(3)).**

Deterring would-be violators is of paramount importance to a criminal enforcement program.  In this case, a meaningful term of incarceration is a necessary component for deterrence.  The value of deterrence in this case is both specific to this defendant and general to other would-be offenders.  Although the defendant has no scorable criminal history, the criminal history he does have is telling.  As the recommendation of Probation Officer Daniel Acker points out:

---

[9] Exhibit 1 (FISHERIES RESEARCH), at 179.
[10] *Id.* at 180.
[11] Andrew W. Bruckner, *The Recent Status of Sea Cucumber Fisheries in the Continental United States of America*, 22 SPC BECHE-DE-MER INFORMATION BULLETIN 42, 39–46 (2005) (attached as Exhibit 4).

Government's Sentencing Memorandum / - 12
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> The current offense is the defendant's first felony. He twice committed similar misdemeanor fishing violations, which involved the defendant buying more fish than his permit allowed. He received little consequence for those offenses and apparently learned nothing from them. He was undeterred and resumed violating fishing regulations on a much larger and more brazen and destructive scale.

USPO Sentencing Recommendation, at 3.

The need for a prison sentence is all the more important in cases involving illegality on the seas or in the wild. Violations of fisheries laws – such as those at issue in this case – are notoriously difficult to detect because they most often occur outside the view of any enforcement official. Fisheries regulators rely, as they must, on the honesty of fishers and wholesale dealers. The system is set up where the dealers and the fishers act as a "check" on each other because both sides of the sale transaction must submit and/or maintain accurate records of the sea cucumbers sold. Where both the dealer and fisher conspire to falsify records the fraud becomes particularly difficult to uncover, and a tremendous amount of effort is required to gather evidence to prove the offense.

Namkoong conspired with dive fishers to keep the season open longer to enrich themselves. In addition to the significant disruption to the data relied on by the shellfish management programs, and the quota-setting process, Defendant Namkoong enjoyed an unfair competitive advantage over the law-abiding wholesale sea cucumber buyers. The sentence in this matter should encourage players in the industry to abide by the rules, rather than accept criminal sanctions and a lenient sentence as a cost of doing business.[12]

The need for general deterrence is also paramount due to the nature of the wholesale sea cucumber industry in Washington State. There are approximately five

---

[12] Selling sea cucumbers is a profitable business. Defendant purchased live sea cucumber for approximately $4.50/pound and then either dried or salted the catch before selling it to wholesale buyers. Based on the defendant's own records, these processes resulted in yields of 10% (dried) and 33% (salted), respectively. Again, based on the defendant's own records, the dried and salted product sold for $75/pound and $22/pound, respectively. Therefore, 100 pounds of live sea cucumber, purchased for $450 dollars, could yield proceeds of, approximately, $750 (dried) or $726 (salted). Financial records show Namkoong spent approximately $2.6 million to purchase sea cucumbers during harvest seasons 2014-15 and 2015-16. He sold the cucumbers for approximately $3.9 million (same time period).

Government's Sentencing Memorandum / - 13
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

major sea cucumber wholesalers in Washington State (including Namkoong). This conviction has already sent ripples through the commercial shellfish community, evidenced, in part, by the delay in the finalization of the 2018-19 sea cucumber harvest management plan to address the over-harvest. *See* WDFW Letter (Exhibit 3), at 2. A significant period of incarceration would be a strong message to the participants and managers of this industry – and the broader fishing industry – that those seeking to profit from this shared natural resource must respect the laws put in place to protect it. In sum, in comparison with other sorts of frauds, general deterrence is of at least equal, if not greater, importance in a natural resource case such as this one.

**D.     The Need for the Sentence Imposed to Protect the Public from Future Crimes of the Defendant (Section 3553(a)(2)(C))**

The government's proposed sentence comports with the just punishment and general deterrence sentencing factors, but also protects the public from future crimes of this defendant. Incarceration for a meaningful period is the first step in reducing the defendant's ability to facilitate the unlawful harvesting of marine resources. The second step is a condition of supervised release that limits the defendant's ability to hold a fish dealers license or to be involved in the purchase of sea cucumbers. *See infra* Pt. VII.

**E.     The Need to Avoid Unwarranted Sentencing Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct (Section 3553(a)(6))**

The government has compiled a number of recent, factually similar cases for the Court's consideration in fashioning a sentence for Mr. Namkoong above in Section III. These analogous cases support the sentence sought by the government.

### Dive Fishers in this Conspiracy Are Not Similarly Situated.

The sentences imposed on other members of the conspiracy are not a useful reference point in determining the proper sentence for Namkoong. Namkoong was the only member of the conspiracy to be prosecuted in federal court. This is because his conduct is qualitatively different than the individual fishers who sold him unreported sea cucumber.

Government's Sentencing Memorandum / - 14
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In terms of scope, role, and benefit from the fraud scheme, the defendant sits in a very different position from any dive fisher convicted. First, he was the hub of the conspiracy, and the critical component. As a wholesale fish dealer, Namkoong creates a market and opportunity for those willing to violate the law on a smaller scale. Without a fish buyer willing to pay for one amount of sea cucumbers, but submit a fish ticket for a lesser amount (or not submit a fish ticket at all), there is little opportunity for the fishers to perpetrate the scheme on their own. Second, there is less incentive for a single fisher to submit false records to keep the fishing season open longer, whereas Namkoong – a primary buyer of sea cucumbers in the state of Washington – has significant financial reason to keep the season open longer. The potential profit on each additional pound of sea cucumber he can purchase is significant. Namkoong profited far more richly from the scheme than any of his co-conspirators.

Because of these factors, the state fishers received suspended or converted prison sentences for felony convictions (or in one case a gross misdemeanor), while the tribal fishers have typically received civil citations and fines.[13] *See* PSR ¶¶ 5-8. However, for the reasons discussed above, they are not relevant data points in this case.

## V. THE NEED TO PROVIDE RESTITUTION TO VICTIMS

Section 3553(a)(7) requires that this Court, in imposing a sentence, consider the need to provide restitution to victims of the offense. Restitution is mandatory in this case, without consideration of the defendant's economic circumstances. *See* 18 U.S.C. §§ 3663A(c)(1)(A)(ii), 3664(f)(1)(A). The plea agreement requires payment of restitution to the affected tribal and state stakeholders in an amount not to exceed $1,499,999. Plea Agreement ¶ 8.

---

[13] The PSR references misdemeanor convictions. Following the date for comments to the PSR, government counsel learned that the Lummi fishers were charged with civil infractions.

Government's Sentencing Memorandum / - 15
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## A. The State and Affected Tribes are Victims for Purposes of the Mandatory Victims Restitution Act (MRVA).

The Mandatory Victims Restitution Act (MRVA) applies to an offense against a victim's property. 18 U.S.C. § 3663A(c)(1)(ii), (c)(2). The statute defines "victim" as "a person directly and proximately harmed as the result of a commission of an offense," and requires that the Court order restitution at a sentencing for a conviction on any "offense against property," in an amount equal to the "value of the property." 18 U.S.C. § 3663A(b)(1). Conspiracies to violate the Lacey Act qualify as offenses against property for purposes of the MVRA. *See United States v. Bruce*, 437 Fed. Appx. 357, 366–67 (6th Cir. 2011) (unpublished); *United States v. Bengis*, 631 F.3d 33, 38–41 (2d Cir. 2011); *United States v. Butler*, 694 F.3d 1177, 1183 (10th Cir. 2012).

Courts that have considered the question have uniformly found that government entities have a proprietary interest in illegally taken natural resources within their borders and qualify for restitution under the statute. *See United States v. Oceanpro Indus.*, 674 F.3d 323, 332 (4th Cir. 2012) (finding that the states of Maryland and Virginia qualified for restitution under the MRVA where defendants convicted of Lacey Act violation related to the sale of untagged and oversized striped bass); *Bruce*, 437 Fed. Appx. at 366-67 ("They [illegally taken mussel shells] were not the property of the possessors, but rather the states from whose waters they were taken. Thus, the states have a property interest . . . and are entitled to compensation for their loss."); *Bengis*, 631 F.3d at 38–41 (concluding South Africa had a property right in illegally harvested rock lobsters under the MRVA); *Butler*, 694 F.3d at 1183–84 (holding that committing harm against the wildlife in a state is tantamount to committing harm against that state's property for the purposes of the MVRA.); *see also New Mexico State Game Comm'n v. Udall*, 410 F.2d 1197, 1200 (10th Cir. 1969) ("[I]nsofar as wild animals within a state are capable of ownership, they are owned by the state in its sovereign capacity for the benefit of its people, with the resulting right to regulate the taking thereof."). Washington State has forfeiture authority over the illegally taken shellfish. RCW 77.15.100(3). This solidifies

Government's Sentencing Memorandum / - 16
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the view that the unreported cucumbers are property of the state. *See also id.* ("Fish, shellfish, and wildlife are property of the state under RCW 77.04.012.").[14]

B.   **Amount of Restitution Due**

The parties have agreed to a restitution amount not to exceed $1,499,999. Plea Agreement ¶ 8. The parties agreed that the wholesale market value, after processing, of the sea cucumbers taken in violation of law was approximately $1,499,999. Plea Agreement ¶ 9(E). The parties also agreed that the total weight of the unreported catch was approximately 250,000 pounds. *Id.* Records show that Namkoong typically paid approximately $4.51/pound of sea cucumbers. Therefore, two possible numbers exist for restitution: $1,129,249.32 (the calculated value paid to divers for the unreported catch at price of $4.51/pound[15]), or $1,499,999 (the agreed post-processing wholesale market value of the unreported sea cucumbers). The government proposes the wholesale market value as consistent with case law in this area. In *Bengis*, the court of appeals determined restitution "by multiplying the number of poached lobsters by the corresponding market price (based on the prevailing market rates at the time the lobsters were poached). Every overharvested lobster that South Africa did not seize and sell represents and loss that has not been recovered." *Bengis*, 631 F.3d at 41; *see also State v. Tobin*, 132 Wash. App. 161, 169 (Wash. Ct. App. 2006) (affirming use of Washington Dept. of Natural Resources geoduck auction prices to set restitution value for illegally harvested geoduck). The wholesale market price received by Namkoong for the illegal catch is a fair approximation of the restitution amount.

C.   **Proposed Restitution Payee**

The co-management structure of the sea cucumber harvest in Washington State complicates the determination of the appropriate restitution payee in this case. The

---

[14] Courts have also found that states qualify for discretionary restitution under the Victim Witness Protection Act (VWPA), as "a person directly and proximately harmed as the result of an offense for which restitution may be ordered." 18 U.S.C. § 3663(a)(2). *See United States v. Bengis, 631 F.3d* at 40-41. As the state qualifies as a victim under the MRVA, reliance on the VWPA is not required.

[15] The actual figure uses the un-rounded average.

Government's Sentencing Memorandum / - 17
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government has solicited WDFW and the affected Indian Tribes (those that have treaty-protected harvest rights in the geographic area impacted by the illegal harvests) for input on the appropriate payee for any restitution award in this case.[16] The parties entitled to share in restitution in this matter have agreed to have NWIFC create a separate account to receive the restitution funds. *See* Joint State-Tribal Restitution Statement and Agreement (Exhibit 5), at 2.[17] An agreement apportioning restitution between stakeholders has precedent in this area. *See State v. Tobin*, 132 Wash. App. at 181 (affirming restitution award of approximately $1,000,000 in illegal geoduck and clam over-fishing case and allocation of those funds, by agreement, to state and affected tribes).

## VI. MONEY JUDGMENT

The defendant has agreed to a money judgment in the amount of $1,499,999 representing the proceeds obtained as a result of this offense. Plea Agreement ¶ 7(c). The government will recommend that any amount collected toward defendant's money judgment be applied to his restitution obligation. *Id.*

## VII. SPECIAL CONDITION OF SUPERVISED RELEASE

The government has proposed the following special condition of supervised release to the Probation Office for consideration:

> The defendant shall be prohibited from obtaining a Washington State wholesale fish dealer license, from acting as a licensed fish buyer for a wholesale dealer, and from any employment directly involving the purchase of sea cucumbers during the term of supervised release.

The government believes that the conviction in this case provides WDFW the ability under the state licensing scheme to suspend Namkoong's ability to engage in

---

[16] The following Tribes have treaty-protected harvest rights in the geographic area impacted by the illegal harvests: Makah Indian Tribe, Port Gamble S'Klallam Tribe, Jamestown S'Klallam Tribe, Lower Elwha Klallam Tribe, Lummi Nation, Nooksack Indian Tribe, Suquamish Indian Tribe, Swinomish Indian Tribal Community, Tulalip Tribe, and Upper Skagit Indian Tribe.

[17] The version of the document attached as Exhibit 5 is unsigned. All parties except the Upper Skagit Tribe have authorized signature of the restitution agreement. The government will confirm all parties have signed the agreement prior to the sentencing hearing.

Government's Sentencing Memorandum / - 18
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

wholesale fish buying for two years. One of the state-law predicate violations for the Lacey Act conspiracy conviction is unlawful fish and shellfish catch accounting in the first degree under RCW 77.15.630. *See* Plea Agreement ¶ 9. A conviction under this statute *requires* the Department of Fish and Wildlife to suspend privileges to engage in wholesale fish buying for a period of two years. *See* RCW 77.15.630(3)(b). Notwithstanding this provision, as of the date of this memorandum, no action has been taken on OSP's wholesale dealer license, or Namkoong's credential as a licensed fish buyer. While the government hopes such action will occur post-final judgment, the proposed condition of supervised release is a necessary safeguard.

Conditions of supervised release are permitted if they relate to the offense, afford deterrence to the criminal conduct, protect the public from further crimes, and provide the defendant with rehabilitative training. *See* 18 U.S.C. § 3583(d). Restrictions that limit a defendant's employment opportunities are subject to special scrutiny. *See* USSG § 5F1.5. Such limitations are permissible only if they bear a "reasonably direct relationship" to the crime and they are "reasonably necessary to protect the public." § 5F1.5(a), (b). Further, if the Court determines that this standard is met, it may only impose the condition "for the minimum time and to the minimum extent necessary to protect the public." § 5F1.5(b).

The proposed condition meets these requirements. The condition of supervised release does not necessarily prohibit OSP from operating or Namkoong from playing a role in the ownership and/or operation of OSP. He simply cannot be the licensed wholesale buyer and he cannot directly participate in the purchase of sea cucumbers during his period of supervision. The Court should make the required findings and impose the requested special condition.

## VIII. CONCLUSION

Based on all the factors outlined above, the government recommends a total sentence of 24 months of imprisonment, followed by three years of supervised release with the conditions recommended by the United States Probation Office. The

Government's Sentencing Memorandum / - 19
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government also respectfully requests that the Court issue an order imposing restitution to the NWIFC in the amount of one million four hundred ninety-nine thousand, nine hundred and ninety-nine dollars ($1,499,999). This sentence will deter those who consider profiting from the theft of Washington's natural resources. It is appropriate in light of the defendant's sophisticated knowledge as a seafood buyer and his lengthy, intentional fraudulent conduct.

DATED this 21st day of September, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*/s/Matthew D. Diggs*
MATTHEW D. DIGGS
C. SETH WILKINSON
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone: (206) 553-2260
Fax: (206) 553-2502
E-mail: matthew.diggs@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*/s/ Kylie Noble*
KYLIE NOBLE
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-3903
Telephone: (206) 553-2520
Fax: (206) 553-4440
E-mail: kylie.noble@usdoj.gov

Government's Sentencing Memorandum / - 20
United States v. Hoon Namkoong, CR18-081RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970